UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                          Chapter 11

Associated Community Services, Inc.,                            Case No. 14-44095

    Debtor.                                              Hon. Phillip J. Shefferly
_____/

United States of America (IRS),                                 Adversary Proceeding
                                                                No. 15-5029-PJS
    Plaintiff,

v.

Associated Community Services, Inc.,

    Defendant.
_____/

**OPINION GRANTING IN PART AND DENYING IN PART
MOTION TO STRIKE ALLEGATIONS AGAINST ATTORNEYS**

**Introduction**

The complaint in this adversary proceeding alleges that a Chapter 11 debtor obtained an order confirming its plan of reorganization by fraud, and requests that the Court revoke the confirmation order under § 1144 of the Bankruptcy Code. In its complaint and in some of its other pleadings, the plaintiff makes a number of allegations against a law firm that acted as special counsel for the debtor during the Chapter 11 case. The law firm filed a motion under § 107(b) of the Bankruptcy Code to strike those allegations because they are scandalous and defamatory. For the reasons explained in this opinion, the Court will grant the law firm's motion in part and deny it in part.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(A) and 28 U.S.C. § 1334(b).

## Facts

The following facts are not in dispute.

Associated Community Services, Inc. ("Debtor") is engaged in the business of soliciting donations for charities and non-profit organizations by direct mail and telephone. On March 13, 2014, the Debtor filed this Chapter 11 case. The Court granted the Debtor's application to employ Schafer and Weiner, PLLC ("Schafer Law Firm") as its Chapter 11 counsel. In addition to the Schafer Law Firm, the Debtor also applied to the Court to employ various other professionals, including Copilevitz & Canter, LLC ("C&C"), a law firm in Kansas City, Missouri that specializes in representing charities in regulatory and other matters. C&C had represented the Debtor in such matters for several years prior to the Debtor's Chapter 11 case. On May 7, 2014, the Court entered an order granting the Debtor's application to employ C&C as its special charity law counsel.

On October 10, 2014, the Debtor filed a combined plan of reorganization and disclosure statement. The Court confirmed the Debtor's plan on April 24, 2015. Following confirmation, C&C filed a final fee application with the Court, which was granted without objection. Since the confirmation order was entered, the Debtor has continued to operate its business soliciting donations for various charities and non-profit organizations.

On October 20, 2015, the Internal Revenue Service ("IRS"), which was a large and active creditor throughout the Chapter 11 case, filed a complaint ("Complaint") (ECF No. 1) alleging that the Debtor procured the confirmation order by fraud. The Complaint alleges that prior to seeking

confirmation, the Debtor knew that the Federal Trade Commission ("FTC") was investigating some of the charities for whom the Debtor solicits funds. The Complaint further alleges that on May 18, 2015, following the investigation, the FTC joined with all 50 states and the District of Columbia to file an enforcement action ("FTC Action") against four of these charities on the grounds that they are "sham charities," seeking both injunctive and monetary relief on behalf of donors who are alleged to have been defrauded. The Complaint further alleges that when the Debtor sought confirmation of its plan, it knew that these four charities were sham charities, and knew of the investigation and the FTC Action against them. Finally, the Complaint alleges that despite this knowledge, the Debtor submitted projections of future operations of its business in its disclosure statement that included substantial continuing revenues from these sham charities and that the Court relied on those projections in confirming the Debtor's plan.

Although the Complaint names only one defendant, the Debtor, and seeks only one form of relief, revocation of the confirmation order under § 1144, the Complaint makes a number of allegations about C&C. Among other things, the Complaint alleges that C&C had personal knowledge of material information regarding the FTC Action that it was under an affirmative duty to disclose to the Court; that it affirmatively chose not to disclose that information; that C&C's "omission or misrepresentation" was "calculated to influence the Court's consideration and determination of the plan's merits"; that C&C made its omissions and misrepresentations "with a reckless disregard for the truth"; and that C&C made "material misrepresentations by omission with actual fraudulent intent."

On November 20, 2015, C&C filed a motion to intervene in this adversary proceeding for the limited purpose of filing a motion to strike the allegations against it in the Complaint. On

December 29, 2015, upon the stipulation of the Debtor, the IRS and C&C, the Court entered an order permitting C&C to intervene for this limited purpose.

By the time that C&C intervened, the IRS had filed other pleadings that also make allegations about C&C. Specifically, on December 10, 2015, the IRS filed a brief ("Brief") (ECF No. 20) in response to a motion to dismiss filed by the Debtor. Also, on December 14, 2015, the IRS filed a first amended complaint ("Amended Complaint") (ECF No. 23).

On January 8, 2016, C&C filed a motion to strike scandalous and defamatory allegations ("Motion to Strike") (ECF No. 29). The Motion to Strike requests the Court to find that the allegations by the IRS against C&C in the Complaint, the Brief and the Amended Complaint are scandalous and defamatory and should therefore be stricken. On January 28, 2016, the IRS filed a response (ECF No. 47) to the Motion to Strike. On February 12, 2016, C&C filed a reply (ECF No. 61). On February 18, 2016, the Court held a hearing on the Motion to Strike and took the matter under advisement.

**Applicable Law**

Section 107 of the Bankruptcy Code titled, "Public access to papers," states in relevant part that "[e]xcept as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination . . . ." 11 U.S.C. § 107(a). "[T]he plain language of § 107(a) evinces a clear congressional intent that papers filed in bankruptcy cases be available to the public." Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.), 422 F.3d 1, 8 (1st Cir. 2005).

However, the presumption of public disclosure reflected in § 107(a) is not absolute. Sections 107(b) and (c) expressly make certain exceptions. The exception that is relevant to the

-4-

Motion to Strike is contained in § 107(b), which provides in relevant part that "[o]n request of a party in interest, the bankruptcy court shall . . . protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title." 11 U.S.C. § 107(b)(2).

The Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure contain provisions that are similar to § 107(b). Fed. R. Civ. P. 12(f), incorporated in adversary proceedings by Fed. R. Bankr. P. 7012(b), authorizes a bankruptcy court to strike a pleading containing "scandalous matter." Fed. R. Bankr. P. 9018 authorizes a bankruptcy court to protect an entity against "scandalous or defamatory matter" contained in any paper filed with the court.

Neither the statute nor the rules define what constitutes either scandalous or defamatory matter. Nor is there any controlling decision by either the Supreme Court or the Sixth Circuit Court of Appeals. However, there is other case law that discusses each of these terms. The most extensive discussion is in Gitto Global, in which the court dealt with the term "defamatory," as used in § 107(b)(2). In that case, a principal of a Chapter 11 debtor filed a motion requesting that the court seal a report made by a Chapter 11 examiner regarding fraud because the report was defamatory. The court stated that the "primary issue on appeal is the definition of 'defamatory' as that term is used in 11 U.S.C. § 107(b)(2)." Gitto Global, 422 F.3d at 6.

The Gitto Global court rejected the moving party's contention that to qualify for protection under § 107(b)(2), they need only identify material that would cause a reasonable person to alter his or her opinion of them, in other words, material that is defamatory under the well established ordinary meaning of the term. Id. at 8. The court found this standard to be too low because it would sweep all manner of documents into the exception under § 107(b)(2).

> Papers filed in the bankruptcy court do not fall within the § 107(b)(2) exception merely because they would have a detrimental impact on an interested party's

> reputation. Rather, . . . the statute requires something more. The exact nature of this additional showing is not apparent, however, from the face of the statute nor from the legislative history. It is therefore left to the courts to determine the specific contours of the exception.

Id. at 11 (citation omitted).

On the other hand, the court also rejected as too high a bar that the "something more" must be a demonstration that the offending statement is untrue.

> While some parties seeking protection under § 107(b)(2) may be able to demonstrate untruthfulness solely on the basis of the papers filed with the court, such situations will be rare. More often than not, statements in a court filing are disputed. It would be unrealistic to require the bankruptcy court to resolve these factual disputes at a preliminary stage of the proceedings. The untruthfulness requirement would add an enormous burden to the bankruptcy courts' already heavy docket by turning motions for protection under § 107(b)(2) into an occasion for mini-trials. We therefore emphasize that although a bankruptcy court *may* grant protection under § 107(b)(2) based on a showing of untruthfulness, protection on this basis is available only in the rare case where the untruthfulness is readily apparent. Bankruptcy courts are under no obligation to resolve questions of truthfulness presented by a § 107(b)(2) motion where doing so would require discovery or additional hearings, or would be otherwise burdensome.

Id.

Pointing out that in most cases, a party seeking protection under § 107(b)(2) will only be able to show that the offending material is *potentially* untrue, Gitto Global held that potentially untrue information detrimental to a party's reputation might still be enough to invoke § 107(b)(2), but only if the party seeking such relief coupled the potentially untrue information with an additional showing. Specifically, the court stated:

> We therefore conclude that material that would cause a reasonable person to alter his opinion of an interested party triggers the protections of § 107(b)(2) based on a showing that either (1) the material is untrue, or (2) the material is potentially untrue and irrelevant or included within a bankruptcy filing for an improper end.

Id. at 14.

-6-

While Gitto Global dealt with defamatory material, the standard utilized in Gitto Global was recently adopted in In re City of Detroit, No. 13-53846, 2014 WL 8396419 (Bankr. E.D. Mich., Aug. 28, 2014), where the issue was not *defamatory* material but *scandalous* material. In that case, a creditor filed an objection to the City of Detroit's Chapter 9 plan of adjustment that alleged that two of the court appointed mediators were biased and had conflicts of interest. The City of Detroit filed a motion to strike, alleging that those statements were scandalous. Similar to Gitto Global, where the court noted that there is no statutory definition of *defamatory,* the court in City of Detroit noted that there is also no statutory definition of *scandalous,* and therefore looked to case law.

To determine the proper standard to apply to § 107(b)(2)'s use of the term scandalous, the City of Detroit court reviewed two different circuit court approaches. First, the court examined the Gitto Global approach described above. Next, the court examined the approach taken in In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d 417 (9th Cir. 2011), where the Ninth Circuit rejected the First Circuit's approach in Gitto Global, and held that it is enough to find that material is scandalous "'if it [is] disgraceful, offensive, shameful and the like.'" City of Detroit, 2014 WL 8396419, at *6 (quoting Roman Catholic Archbishop, 661 F.3d at 432). In contrast to Gitto Global, Roman Catholic Archbishop held that § 107(b)(2) is triggered even if there is no showing that the offending material is untrue, potentially untrue, irrelevant, or intended for an improper purpose. Id.

After reviewing the two conflicting circuit court approaches, the City of Detroit court adopted the standard developed by Gitto Global for *defamatory* material and applied it to *scandalous* material as well, for purposes of § 107(b)(2).

> The Court concludes that the reasoning and conclusion of *Gitto Global* are the most persuasive and adopts them, for one simple reason. Under *Roman Catholic*

15-05029-pjs    Doc 78    Filed 03/17/16    Entered 03/17/16 15:36:38    Page 7 of 13

*Archbishop of Portland in Oregon,* determining whether matter is scandalous does not involve examining its relevance. The difficulty with this view is that many papers and pleadings in bankruptcy allege conduct that is arguably disgraceful, offensive or shameful–fraud, bad faith, willful and malicious injury, to name only a few–but which courts would not consider striking because those allegations are relevant to the legal claims that must be resolved. As the First Circuit observed in *Gitto Global,* "Many, if not the vast majority, of these papers will include material that is likely to affect an individual's reputation in the community." 422 F.3d at 8-9.

      Accordingly, applying *Gitto Global,* the Court will grant the City's motion if it finds that the challenged matter would cause a reasonable person to alter his opinion of [the mediators], and that either (1) the challenged matter is false or (2) the challenged matter is potentially false and irrelevant or included within a bankruptcy filing for an improper end.

Id. at *6.

The Court agrees with City of Detroit and finds persuasive the Gitto Global standard both when applied to alleged defamatory material and when applied, as in the City of Detroit, to alleged scandalous material. Having no controlling standard by the Sixth Circuit Court of Appeals, the Court adopts the Gitto Global standard and will apply it to the three papers identified by C&C in the Motion to Strike.

## **The Complaint**

The Complaint alleges that C&C: "procured" the confirmation order "by fraud" (¶ 8); "willfully failed to disclose" the FTC Action (¶ 10); made an "omission or representation . . . calculated to influence the Court's consideration and determination of the plan's merits" (¶ 50); made "omissions and representations" to the Court "with a reckless disregard for the truth" (¶ 51); and "made these material representations with actual fraudulent intent" (¶ 57).

These allegations directly and negatively reflect on C&C's truthfulness and integrity. There is no serious question that these allegations would cause a reasonable person to alter his or her opinion about C&C.

-8-

The next issue is whether these allegations are untrue or potentially untrue. C&C argues that they are all untrue because C&C: only served as the Debtor's special counsel for a limited purpose; had no involvement in the preparation of the Debtor's plan and disclosure statement; had no duty to disclose any facts about the FTC Action; was prohibited by Missouri Rules of Professional Responsibility from disclosing to the Debtor any facts about any of its other clients who may have been involved in the FTC Action; made no omissions or misrepresentations to the Court; and obtained from the Court an order granting C&C's final fee application which bars the IRS from now claiming that C&C breached any duty arising out of its representation of the Debtor as special counsel in its Chapter 11 case. The IRS disagrees, and asserts that all of these allegations are true.

The Court could potentially resolve the truth of some of these allegations without receiving evidence based solely on the application of legal principles (e.g., the extent of a duty of disclosure by special counsel appointed under § 327(e)). However, to resolve the truth of most of these allegations (e.g., the extent to whether C&C made an "omission or representation . . . calculated to influence the Court's consideration and determination of the plan's merits"), the Court would of necessity have to conduct an evidentiary hearing. The Court does not intend to burden the parties with the expense and delay of holding a mini-trial to determine the truthfulness of these allegations. On the record as it presently exists, the Court cannot determine whether the offending allegations made by the IRS about C&C are true or untrue.

However, consistent with Gitto Global, C&C may still obtain relief under § 107(b)(2) without proving that these allegations are untrue if it can show that they are potentially untrue and that they are either irrelevant or were made with an improper purpose. Even without a fully

developed evidentiary record, it is clear to the Court that the referenced allegations in the Complaint are at least potentially untrue.

The Schafer Law Firm, not C&C: served as the parties' Chapter 11 counsel; signed and filed the Debtor's plan and disclosure statement; and represented the Debtor at all of the hearings related to approval of the Debtor's disclosure statement and confirmation of the Debtor's plan. Further, quite apart from the distinction between the Schafer Law Firm's role as the Debtor's Chapter 11 counsel and C&C's limited role as special counsel, it is undisputed that the FTC Action was not an action brought against the Debtor. Even the IRS concedes that the FTC Action was only brought against charities who were clients of the Debtor. Just because C&C may have had knowledge about its other clients who are parties to the FTC Action, it does not follow that C&C had even the right, let alone the duty, to share that information with the Debtor – who is not a party to the FTC Action. The Court need not dissect every argument raised by C&C as to why the referenced allegations in the Complaint are untrue, and need not conduct a mini-trial to determine their truth, because the current state of the record is enough for the Court to find that the referenced allegations about C&C in the Complaint are potentially untrue.

Having found that these allegations would cause a reasonable person to alter his or her opinion of C&C, and that they are at least potentially untrue, the Court must next consider whether these allegations are irrelevant or included for an improper purpose. The Complaint names only one defendant, the Debtor, and seeks only one form of relief, revocation of the confirmation order. To obtain that relief, the IRS must prove that the confirmation order itself was procured by fraud. 11 U.S.C. § 1144. The Complaint does not allege that C&C: represented the Debtor in the preparation of the plan and disclosure statement; prepared any of the projections of future operations

submitted in support of the plan; represented the Debtor at the confirmation hearing; participated in the confirmation hearing; or ever addressed the Court either in a pleading or by appearance at a hearing, in support of confirmation of the plan. Because it was the Debtor, represented by the Schafer Law Firm and not by C&C, who procured the confirmation order, even if the IRS proves its allegations against C&C it does not follow that the confirmation order itself was obtained by fraud. If proven true, those allegations may be relevant to some other form of relief, but they do not seem to be relevant to the relief requested in the Complaint. Further, whatever *de minimis* probative value the allegations may have to the relief requested is in any event greatly outweighed by the direct and significant negative impact the allegations will have on C&C's reputation in the legal community.

Because these allegations are not relevant to the relief sought by the Complaint, the Court need not consider C&C's additional contentions that the IRS had some improper purpose in making them or that they are barred by the *res judicata* effect of the Final Fee Order. It is enough that the allegations are irrelevant. The Court will strike the Complaint and seal it from public view.

**The Brief**

The Brief repeats the allegations made against C&C in the Complaint. The application of the Gitto Global standard is the same. These allegations: would cause a reasonable person to alter his or her opinion about C&C; are potentially untrue; and are irrelevant to the relief requested in the Complaint. Therefore, the Court will strike the Brief and seal it from public view.

**The Amended Complaint**

The Amended Complaint removed many of the allegations against C&C that are made in the Complaint and the Brief. In contrast to the Complaint and the Brief, the Amended Complaint does

-11-

not allege that C&C: breached any duty of disclosure to the Court; made any omission or representation; acted in reckless disregard for the truth; made any representation with actual fraudulent intent; or procured the confirmation order by fraud. In sum, the Amended Complaint removed any allegations about C&C that directly and negatively reflect on C&C's truthfulness and integrity.

The Motion to Strike concedes that the Amended Complaint did excise some of the scandalous and defamatory statements about C&C that appear in the Complaint and Brief, but argues that "others remain and new ones are added." Specifically, the Motion to Strike identifies paragraphs 56-58, 66, 71, 78, 91, 96, 99-100, 106 and 119 of the Amended Complaint as being scandalous and defamatory. However, a review of those allegations does not support C&C's claim that they are scandalous or defamatory. For example, paragraph 56 of the Amended Complaint alleges that an employee at C&C informed an employee of the Debtor about the possibility of the FTC Action. That is not a pejorative statement about C&C, it is simply an allegation that a communication took place. Whether true or untrue, the fact of that communication would not cause a reasonable person to alter his or her opinion about C&C. Similarly, paragraph 57 of the Amended Complaint alleges that an individual associated with one of the charities named in the FTC Action authorized an employee of C&C to discuss the FTC Action with a representative of the Debtor. Again, this allegation merely alleges that a communication took place. It suggests nothing about the truthfulness and integrity of C&C and would not cause a reasonable person to alter his or her opinion about C&C. Paragraph 66 of the Amended Complaint alleges that an employee of one of the charities named in the FTC Action authorized an employee of C&C to communicate information about the FTC Action to the Debtor's compliance officer. Whether such person did or did not

authorize C&C to make such communication connotes nothing about C&C's truthfulness or integrity. Paragraphs 58, 71, 78, 91, 96, 99-100, 106 and 119 of the Amended Complaint are all similar in nature. They all allege facts regarding the existence of communications among the Debtor, C&C and representatives of the charities who are parties in the FTC Action.

While the Amended Complaint unequivocally alleges that the Debtor procured the confirmation order by fraud, the paragraphs in the Amended Complaint that the Motion to Strike identifies as offensive do not contain allegations that would cause a reasonable person to alter his or her opinion *about C&C*. The Amended Complaint just alleges the fact of communications among the Debtor, C&C and the charities that are subject to the FTC Action. The Court need not consider whether these allegations are untrue, potentially untrue, irrelevant or made for an improper purpose because none of these allegations meet the first element necessary to invoke protection under § 107(b)(2): that they would cause a reasonable person to alter his or her opinion about C&C. The more limited allegations contained in the Amended Complaint about C&C are not scandalous or defamatory. The Court will deny C&C's request that the Amended Complaint be stricken and sealed from public view.

### Conclusion

For the reasons stated, the Court finds that the referenced allegations in the Complaint and Brief are scandalous and defamatory sufficient for purposes of § 107(b)(2), but those in the Amended Complaint are not. The Court will enter a separate order consistent with this opinion.

Signed on March 17, 2016

                                                             /s/ Phillip J. Shefferly
                                                              Phillip J. Shefferly
                                                              United States Bankruptcy Judge